IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NANCY K. ALANIS, | § § § | |
| Plaintiff, | § § | SA-18-CV-00138-OLG-ESC |
| vs. | § § | |
| NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER, and KELLY HARVEY, P.C., d/b/a HARVEY LAW GROUP, | § § § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant Nationstar Mortgage LLC, doing business as Mr. Cooper's ("Nationstar"), Motion for Summary Judgment [#71]. Also before the Court is Plaintiff Nancy K. Alanis's ("Alanis") Response to Nationstar's Motion for Summary Judgment [#77] and Nationstar's Reply in Support of Its Motion for Summary Judgment [#78]. On May 11, 2018, the Honorable Orlando L. Garcia referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Rule 72 of the Federal Rules of Civil Procedure and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#14]. The undersigned has authority to enter this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Nationstar's Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART.**

## I. Procedural Background

On February 9, 2018, Alanis, on behalf of herself and all others similarly situated, filed a complaint against Nationstar and Defendant Kelly Harvey, P.C., doing business as Harvey Law Group ("Harvey") (collectively, "Defendants") [#1], alleging claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. §§ 392.001–392.404 (West 2019). Specifically, Alanis claims that Defendants violated these statutes by using false, deceptive, or misleading representations or means in their attempts to collect an alleged, but non-existent, debt from her.

On May 4, 2018, Harvey filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [#12]. On September 4, 2018, the undersigned recommended that Harvey's motion to dismiss be denied [#29]. The District Court accepted the undersigned's recommendation on November 20, 2018 [#39]. On February 14, 2019, Alanis filed an amended complaint [#59], which dropped all class-action allegations and is the live pleading in this case. On June 28, 2019, Nationstar filed a motion for summary judgment [#71], which is ripe and the subject of this Report and Recommendation. Harvey has not moved for summary judgment.

## II. Summary-Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *See Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary-judgment evidence in the light most favorable to the non-movant. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Facts Established by the Summary-Judgment Record

The relevant facts, viewed in the light most favorable to Alanis, are as follows. Alanis owned property located at 1040 Blanco Road, San Antonio, Texas 78212 ("the Property"). (Decl. of Nancy K. Alanis ("Alanis Decl.") [#77-1] ¶ 6 & Ex. A-3, at 1.) In July 2016, Alanis obtained a $96,000 home-equity loan from CIT Group/Consumer Finance, Inc., which was

3

secured by a deed of trust on the Property. (Alanis Decl. ¶ 3 & Ex. A-1, at 1.) The loan was subsequently transferred to U.S. Bank National Association ("U.S. Bank."). (*Id.*) U.S. Bank initiated foreclosure proceedings on the Property, and it was sold at a foreclosure sale in January 2010. (Alanis Decl. ¶ 4 & Ex. A-1, at 1–2.) Alanis unsuccessfully challenged the foreclosure proceedings in state court. (Alanis Decl. ¶ 5.) The parties do not dispute that this foreclosure sale extinguished Alanis's obligations on the home-equity loan.

Despite the 2010 foreclosure sale, on August 5, 2013, U.S. Bank sent Alanis a letter stating that Nationstar was the new servicer of her loan and that Nationstar, rather than U.S. Bank, has the authority and responsibility to make decisions regarding her loan. (Alanis Decl. ¶ 6 & Ex. A-2, at 1.) On August 23, 2013, the deed of trust executed by Alanis in favor of the original lender was assigned to Nationstar. (Alanis Decl. ¶ 6 & Ex. A-3, at 1.) Alanis sent three letters to Nationstar on September 3, 2013, April 10, 2014, and May 15, 2015. (Alanis Decl. ¶ 7 & Exs. A-4, A-5, A-6.) Each letter requested, among other things, a coupon book (a set of pre-printed payment stubs that a mortgage broker provides to the borrower) to ensure timely monthly payments on her mortgage. (Alanis Decl. ¶ 7 & Exs. A-4, A-5, A-6.) Alanis did not receive a coupon book from Nationstar. (Alanis Decl. ¶ 7.) Alanis called Nationstar on at least ten separate occasions in an attempt to "straighten this situation out." (*Id.* at ¶ 9.)

On February 9, 2017, Harvey, on behalf of U.S. Bank and Nationstar, sent two letters to Alanis. (Compl. [#1] Exs. B & C.) One letter was titled "Fair Debt Collection Practices Act Notice," and advised that "[o]ur clients have requested that we institute foreclosure proceedings in regard to the above referenced Note. This communication is from a debt collector and any information we obtain will be used for that purpose." (Compl. Ex. B at 1.) The letter also

represented that, "[a]s of February 26, 2017, the total amount due to pay off the above referenced loan is $213,106.96," and that:

> The law does not require us to wait under the end of the thirty (30) day period before beginning the foreclosure proceeding. If however you request proof of the validity of the debt or the name and address of the original creditor within the thirty (30) day period that begins with receipt of this letter, the law requires us to suspend our efforts to foreclose and collect the debt until we mail the requested information to you.

(*Id.*) The other letter was titled "Notice of Acceleration," and stated that "[t]his communication is from a debt collector and this is an attempt to collect a debt and any information obtained will be used for that purpose." (Compl. Ex. C at 1.) The letter also informed Alanis that, "[s]ince the default was not cured, the Note has been accelerated and all unpaid principal, interest, fees and costs are now due." (*Id.*)

The two letters sent by Harvey to Alanis were the result of an error by a Nationstar employee who, "shortly after [Alanis's] mortgage loan was transferred to Nationstar," manually removed from the electronic file for the subject loan the "Real Estate Owned (06)" code. (Decl. of A.J. Loll ("Loll Decl.") [#72-2] at ¶ 6.) The inadvertent, manual removal of this code eliminated any indication that Alanis's property had already been sold at a foreclosure sale. (*Id.*) "As a result of this error, the processes and procedures in place to prevent correspondence with [Alanis] were not operative and the foreclosure process was started as if the loan had not already been foreclosed." (*Id.*) The evidence in the record does not conclusively establish exactly when this error occurred, or whether it occurred before or after Alanis's letters in 2013 and 2014, or before or after Alanis called Nationstar to "straighten things out."

### III. Analysis

Nationstar now moves for summary judgment on Alanis's claims against it. Nationstar's motion for summary judgment on the FDCPA claims should be denied because: (1) contrary to

5

Nationstar's assertions, the FDCPA imposes liability on unscrupulous debt collectors for abusive debt collection practices, regardless of whether the underlying debt is valid; and (2) Nationstar has not demonstrated as a matter of law that the bona-fide-error defense applies here. But the Court should grant Nationstar's motion for summary judgment on Alanis's TDCA claim because Alanis has not presented any evidence of actual damages.

A.  **The Court should reject Nationstar's argument that Alanis's FDCPA claims are foreclosed because the underlying debt obligation was extinguished.**

The Court should deny Nationstar's summary-judgment motion based on its argument that, because the underlying debt in this case was extinguished at the time Nationstar engaged in the challenged collection activities, Alanis is precluded from bringing an FDCPA claim against Nationstar. The parties do not dispute that Alanis's debt obligation was extinguished. In Texas, a home-equity loan "is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud." Tex. Const. art. XVI, § 50(a)(6)(C). Here, because Alanis's home-equity loan was a non-recourse loan, Alanis's mortgage debt was extinguished by the foreclosure sale, and Alanis had no personal liability beyond the loss of the Property. *See Pineridge Assocs., L.P. v. Ridgepine, LLC*, 337 S.W.3d 461 (Tex. App.—Fort Worth 2011, no pet.) (describing the effect of a non-recourse loan); *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (same).

In support of its argument that the extinguished status of the underlying debt precludes Alanis's FDCPA claim, Nationstar relies primarily on *Young v. ProCollect, Inc.*, No. 4:18-CV-475-A, 2019 WL 764656, at *3 (N.D. Tex. Feb. 21, 2019). According to the district court in *Young*, "[t]he law is clear that once a consumer has paid a debt in full, there is no debt as defined in the FDCPA and the FDCPA does not apply to post-collection activities." *Id*. Yet the

authorities that the *Young* court relied on in support of this assertion—three district court decisions from outside the Fifth Circuit—do not establish that the law is "clear" on this point. *See id*. (citing the following in support of its assertion: *Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1193 (N.D. Cal. 2011); *Huffman v. BC Servs., Inc.*, No. 16-CV-02431-KLM, 2017 WL 2537106, at *3 (D. Colo. June 9, 2017); and *Posso v. Asta Funding Inc.*, No. 07 C 4024, 2007 WL 3374400, at *3 (N.D. Ill. Nov. 9, 2007)).

Moreover, Nationstar's (and the *Young* court's) interpretation of the FDCPA conflicts with the statute's plain language. The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA defines "debt" as "any obligation *or alleged obligation* of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5) (emphasis added). Thus, the statutory definition of debt encompasses the situation in this case, where Nationstar attempted to collect a debt that it *alleged* that Alanis owed, although she did not. Nationstar's construction of the statute also conflicts with Section 1692k, which imposes civil liability on "any debt collector who fails to comply with any provision" of the FDCPA. *Id.* § 1692k(a). The statute makes no exception for a debt collector's use of abusive practices to collect or attempt to collect an alleged, but non-existent, debt.

In addition, the Fifth Circuit has held that a FDCPA claim "is not contingent upon the validity of the underlying debt." *McCartney v. First City Bank*, 970 F.2d 45, 46 (5th Cir. 1992). In 1977, Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To that end, the FDCPA holds debt collectors accountable for

7

abusive, deceptive, and unfair debt collection practices, "regardless of whether the debt is valid." *McCartney*, 970 F.2d at 47. Accordingly, "the validity of the underlying debt is not a bar to suit under the Fair Debt Collection Practices Act." *Id.* at 47–48. The Fifth Circuit is not alone in this view.[1] At least four other courts of appeals have similarly indicated that a FDCPA claim is not contingent upon the validity of the underlying debt. *See Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015) ("A FDCPA claim . . . does not focus on the validity of the debt, but instead on the use of unfair methods to collect it.") (internal quotation marks and citation omitted); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("The statute is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt."); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."); *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1136 (8th Cir. 1981) (stating that a FDCPA claim "involves not the loan itself, but the use of unfair methods to collect it").

Nationstar's attempt to distinguish *McCartney* is unavailing. Nationstar attempts to limit *McCartney* to its facts and argues that the case only addresses a plaintiff's standing to assert a FDCPA claim where the debt is valid and outstanding and has no relevance to a situation where a plaintiff sues under the FDCPA based on collection activity related to a debt that has already been paid or extinguished. (Reply [#78] at 5.) This narrow reading of *McCartney* is inconsistent

---

[1] And district courts in the Fifth Circuit have repeatedly quoted the above language with approval, *Young* notwithstanding. *See*, *e.g.*, *Shular v. LVNV Funding LLC*, No. CV H-14-3053, 2016 WL 685177, at *3 (S.D. Tex. Feb. 18, 2016); *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *report and recommendation adopted*, No. 3:11-CV-3171-N-BH, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012); *Walton v. Franklin Collection Agency, Inc.*, No. 198CV288DD, 1999 WL 33537147, at *2 (N.D. Miss. May 6, 1999).

8

with the case's reasoning and its emphasis on the debt collector's conduct, rather than the legal status of the underlying debt. It is also inconsistent with *McCartney*'s broad pronouncement that an action under Section 1692 "is not contingent upon the validity of the underlying debt." 970 F.2d at 46. Nationstar's proposed construction would make an action under Section 1692 contingent upon the status of the underlying debt, at least in situations where the debt obligation has been extinguished. But as *McCartney* emphasized, the FDCPA is "designed to protect consumers who have been victimized by unscrupulous debt collectors, *regardless of whether a valid debt actually exists*." *Id.* at 47 (quoting *Baker*, 677 F.2d at 777 (emphasis added) (internal quotation marks omitted)).

Finally, *Young*, and the cases it cites, can be readily distinguished from the instant case. In *Young*, the defendant sent the plaintiff a collection letter that showed that the plaintiff's balance on the account was $0.00, but then attempted to collect a $7.50 collection fee. In dismissing the plaintiff's FDCPA claims, the court found it important that:

> [P]laintiff paid his debt in full and defendant properly noted that the debt was paid and so reported it. The July 7 letter was an obvious mistake and not an attempt to collect the debt, which had been paid in full. And, indeed, plaintiff was notified on multiple occasions that such was the case.

*Young*, 2019 WL 764656, at *3. This case is not analogous to *Young*, as the two letters sent by Harvey to Alanis did not reflect that the home-equity loan and Alanis's obligation to pay it were extinguished when the property was sold at a foreclosure sale. On the contrary, Nationstar, through its foreclosure counsel, represented to Alanis that the underlying debt was valid and that the loan was being accelerated, and demanded payment of the entire loan balance. In short, the undersigned is not persuaded that the FDCPA is inapplicable to the case at hand, and Nationstar is not entitled to summary judgment on this basis.

**B.  Nationstar has not established that the bona-fide-error defense applies as a matter of law**.

Without conceding that any of its conduct violated the FDCPA or TDCA, Nationstar contends that, regardless, it is entitled to summary judgment on Alanis's claims under both statutes because the bona-fide-error defense applies and shields it from liability. But the record does not establish that Nationstar is entitled to this defense as a matter of law.

The FDCPA provides a defense when debt collectors make unintentional, bona fide errors:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c). The TDCA provides for a similar defense. *See* Tex. Fin. Code Ann. § 392.401 (West 2019) ("A person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error."). To successfully invoke the defense, "the debt collector must show both that the violation was not intentional, *and* that it maintained procedures reasonably adapted to avoid such an error." *Talamor v. I.C. Sys., Inc.*, No. 1:16-CV-435-DAE, 2017 WL 3712186, at *7 (W.D. Tex. Aug. 10, 2017).

In an attempt to meet its burden to demonstrate that the defense applies here, Nationstar has submitted the declaration of A.J. Loll, Vice President of Nationstar. The declaration provides, in pertinent part:

> 6.    Nationstar's business records show that shortly after Plaintiff's loan was transferred to Nationstar, a Nationstar employee made an inadvertent error and manually removed from the electronic file for the subject loan the "Real Estate Owned (06)" code. The purpose of the code was to ensure certain

communications and notices were not sent to Plaintiff in the course of servicing. The inadvertent manual removal of this code eliminated any indication that Plaintiff's property had already been sold at a foreclosure sale. As a result of this error, the processes and procedures in place to prevent correspondence with Plaintiff were not operative and the foreclosure process was started as if the loan had not already been foreclosed.

       7.    Based on my review of Nationstar's business records, the code removal was an isolated human error and was non-systemic.

       8.    I am personally aware that Nationstar has processes and procedures designed to avoid and prevent any violation of the Federal Debt Collection Practices Act ("FDCPA"), the Texas Debt Collections Act ("TDCA"), and other similar consumer protection statutes. Specifically, reasonable procedures are in place to prevent errors in sending notices and other correspondence to borrowers as well as to its foreclosure counsel.

       9.    Any violation of the FDCPA, the TDCA, or other consumer protection statute by Nationstar in this matter was not intentional and resulted from a bona fide error by Nationstar, notwithstanding Nationstar's adoption and use of reasonable procedures intended to avoid such inadvertent human error.

(Loll Decl. at ¶¶ 6–9.)

Nationstar "must establish that it had a reasonable procedure in place to prevent the kind of error that occurred." *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 723 (S.D. Tex. 2012). Loll's conclusory testimony that Nationstar had "reasonable procedures" is not sufficient to demonstrate that it indeed had reasonable procedures in place to prevent the kind of error that occurred in this case. Loll's testimony does not include details about how much time elapsed between the coding error and when the communications were sent to Alanis, which would be relevant to the reasonableness of the procedures to catch errors. In addition, Alanis testified in her declaration that she notified Nationstar, in writing, on at least three separate occasions that the Property had already been sold at a foreclosure sale, and that she called Nationstar at least ten times in an attempt to "straighten this situation out." (Alanis Decl. at ¶ 9.) The record is silent on how Nationstar handles written and oral communications from a borrower that her property

11

had already been foreclosed upon and sold at a foreclosure sale. That, too, would be relevant to the issue of whether Nationstar's procedures are reasonable.

Nationstar cites *Coleman v. Credit Mgmt., LP*, No. 3:10-CV-2312-M, 2011 WL 5248219, at *1 (N.D. Tex. Nov. 2, 2011), contending that it is analogous to the instant case. In *Coleman*, the defendant was hired to pursue collection of an alleged debt from an individual identified as A.H., residing in California. *See id.* at *1. The defendant tried to telephone A.H. on a number of occasions; however, the defendant repeatedly called the wrong telephone number. *See id.* After the plaintiff told the defendant that she was not the individual sought by the defendant, she received no additional phone calls from the defendant. *See id.* The plaintiff sued, and the defendant invoked the bona-fide-error defense. The defendant submitted an affidavit of an employee as evidence of its practices and procedures regarding telephone calls. *See id.* at *4. In the affidavit, the employee stated that it was the company's policy to remove incorrect phone numbers as soon as the company was put on notice that such number was incorrect, by coding that number "141," and that this procedure stopped future calls to a flagged number. *See id.* The court found the employee's affidavit sufficient to carry the debt collector's burden of showing reasonable procedures to avoid mistakes. *See id.* at *5. In reaching this conclusion, the court noted that, "[o]nce Plaintiff told Defendant she was not the person it sought in connection with the debt, its phone calls to her ceased. Defendant's practice of coding incorrect numbers as '141' was proven effective by an absence of calls to Plaintiff after she informed Defendant of its mistake." *Id.*

Nationstar's reliance on *Coleman* is inapposite. This case is superficially similar to *Coleman* because both defendants ceased debt collection activities immediately after being notified of their mistake. However, according to the record before this Court, Nationstar, unlike

12

the debt collector in *Coleman*, was informed, both in writing and orally, that the underlying debt was invalid *before* attempting to collect on it. Also, as explained above, a debt collector must do more than just claim "reasonable procedures"; the collector must offer some explanation of how such procedures operate and why they are reasonably adapted to the error. For the reasons set forth above, Nationstar has not met this burden.

Nationstar also relies on *Goodman v. S. Credit Recovery, Inc.*, No. CIV. A. 97-2385, 1999 WL 14004, at *2 (E.D. La. Jan. 8, 1999), in which the Eastern District of Louisiana reasoned that an inadvertent clerical error in a debt collector's mailroom that resulted in an initial correspondence with a debtor being sent to the wrong address "falls squarely within the parameters of § 1692k(c)." In that case, however, the court noted that the debtor offered no rebuttal to the debt collector's argument that the violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. *See id.* Here, in contrast, Alanis has submitted a declaration that she notified Nationstar, in writing, on at least three separate occasions that the Property had already been sold at a foreclosure sale, and that she called Nationstar at least ten times in an attempt to "straighten this situation out." (Alanis Decl. at ¶ 9.) Genuine issues of material fact exist that preclude resolving the applicability of the bona-fide-error defense on summary judgment. Thus, Alanis's FDCPA claims against Nationstar should proceed to trial. Although Nationstar has not established the bona-fide-error defense as to Alanis's TDCA claims either, these claims fail for another reason.

C. **Nationstar is entitled to summary judgment on Alanis's TDCA claims.**

Nationstar also moves for summary judgment on Alanis's TDCA claims on the ground that Alanis cannot establish an essential element of these claims—that she suffered any damages. Alanis did not respond at all to this argument. The undersigned agrees with Nationstar.

In order to recover under the TDCA, a plaintiff must demonstrate that (1) the debt at issue is a consumer debt; (2) defendant is a debt collector within the meaning of the TDCA; (3) defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against plaintiff; and (5) plaintiff was injured as a result of defendant's wrongful act. *See Lopez-Garcia v. Deutsche Bank Nat'l Tr. Co. for Argent Sec. Inc.*, No. 5:16-CV-00217 (RCL), 2017 WL 2869430, at *4 (W.D. Tex. July 5, 2017). The TDCA provides that "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.403(a) (West 2019). The TDCA also allows for statutory damages in certain circumstances: "A person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter." § 392.403(e). Importantly, Alanis is not suing under Sections 392.101, 392.202, or 392.301(a)(3). Texas courts that have addressed the issue have consistently held that, absent a request for injunctive relief or a violation of one of the three sections for which statutory damages are available, a plaintiff who cannot prove actual damages cannot successfully maintain an action under the TDCA. *See Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 801 (S.D. Tex. 2010) (collecting cases).

Alanis alleges that Nationstar violated Section 392.304(a)(19) of the TDCA, which prohibits a debt collect from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code Ann. § 392.304(a)(19)

14

(West 2019). In her Amended Complaint, Alanis seeks both statutory and actual damages for Nationstar's alleged violation of this section. (Am. Compl. [#59] at 16.) But Section 392.304(a)(19) is not one of the three sections for which statutory damages are available. And Alanis has not presented any evidence of injury as related to this claim, only a request for actual damages in an amount to be determined at trial. (*Id.* at ¶¶ 49–50.) This is not competent summary-judgment evidence. *See Topalian*, 954 F.2d at 1131 (stating that mere conclusory allegations are not competent summary-judgment evidence and that a non-movant may not rely on mere allegations made in her pleadings without setting forth specific facts establishing a genuine issue worthy of trial). It follows that Nationstar is entitled to summary judgment on Alanis's TDCA claim against it. *See Johnson v. Ocwen Loan Servicing LLC*, No. 3:16-CV-2213-M, 2018 WL 655361, at *4 (N.D. Tex. Jan. 10, 2018), *report and recommendation adopted*, No. 3:16-CV-2213-M, 2018 WL 638256 (N.D. Tex. Jan. 31, 2018), *aff'd sub nom. Johnson v. Ocwen Loan Servicing, L.L.C.*, 916 F.3d 505 (5th Cir. 2019) ("Because Ms. Johnson has not pointed to evidence in the record to show that she suffered actual damages that were caused by Defendants' alleged [TDCA] violations, the undersigned concludes that no genuine dispute of material fact exists as to her damages.").

## IV. Conclusion and Recommendation

Having considered the motion, the response and reply thereto, the attached exhibits and declarations, the applicable legal authorities, and the entire record in this matter, the undersigned recommends that Nationstar's Motion for Summary Judgment [#71] be **GRANTED IN PART AND DENIED IN PART.** Specifically, it is recommended that Nationstar be **GRANTED** summary judgment on Alanis's Texas Debt Collection Act claim, but Nationstar's Motion for

Summary Judgment should be in all other respects **DENIED**. Alanis's FDCPA claims against Nationstar should proceed to trial along with her claims against Harvey.

## V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed within fourteen (14) days after being served with a copy of same, unless this time period is modified by the district court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a de novo determination by the district court. *See Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 23rd day of August, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE